## APPEAL OF J. A. WEIBLE, ET AL.

### [KUHN v. WEIBLE, ET AL.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF WARREN COUNTY, IN EQUITY.

Argued May 10, 1889—Decided May 27, 1889.

(*a*) In 1881, Marsh and Kuhn procured an oil lease subject to forfeiture on failure to operate thereunder. No operations were begun, but on August 4, 1883, the lease was renewed on condition that active operations should begin within 30 days, and on the same day M. and K. assigned a one third interest to Weible.

(*b*) Operations were begun, but discontinued. On May 9, 1884, a new lease was made by the landowners to Brown, who on May 12th' assigned a one half interest therein to C. and J., and the other one half interest to Weible. Operations under this lease were successful, and on June 18th, Kuhn filed a bill in equity to establish his one third interest in the leasehold and for an injunction and account.

(*c*) The master found, upon the facts in evidence, that Brown, in procuring the lease of May 9th, was the agent of Weible; that Kuhn's rights under the original lease and renewal were not affected by the new lease; that the one third interest under the new lease was held in trust for Kuhn; and, stating an account, awarded a sum certain to Kuhn as his one third of the accrued production.

1. The court below having confirmed the reports of the master and decreed accordingly, the record, on appeal to the Supreme Court, showing that the proceeding involved questions of fact and account, merely, all of which had been satisfactorily adjusted by the master and court below, the decree was affirmed and the appeal dismissed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 116 July Term 1888, and No. 3 January Term 1889, Sup. Ct.; court below, No. 16 September Term 1884, C. P. in Equity.

On June 18, 1884, John R. Kuhn filed a bill in equity against Joseph A. Weible, H. E. Brown, Titus S. Emery, George Sturgis, Hattie B. Davis, Jeremiah G. Shaw and The Anchor Oil Company, asserting an interest in an oil leasehold, and, upon the facts charged in relation thereto, praying that

an injunction be granted restraining the defendants from destroying an original lease and the extension thereof, and any letters or telegrams relating thereto ; that any writing attempting to surrender the lease be given up and canceled ; that said lease be delivered to plaintiff, or to some person appointed by the court, for safe keeping ; that a certain lease from T. S. Emery, attorney in fact, to H. E. Brown, be delivered up and canceled ; and that plaintiff be at liberty to examine witnesses, etc., in perpetuam rei memoriam. A preliminary injunction was awarded, and afterwards, on motion, continued until further hearing.

On September 19, 1884, by leave of court, an amended bill was filed averring that said Weible and Brown were the trustees of the plaintiff as to the title to the leasehold and as to one third of the oil produced therefrom, and that no account had been taken of the production ; praying that the names of the National Transit Company and W. H. Dufur be added as defendants, and that the said National Transit Company and W. H. Dufur be enjoined from receiving one third of the oil produced ; that an account be taken, and that Weible and Brown be decreed trustees for the plaintiff as to the undivided one third of the leasehold.*

On February 9, 1885, a receiver was appointed to receive from the National Transit Company, all the oil which had accrued to the one third of the leasehold interest described in the plaintiff's bill, to settle the storage, shrinkage, etc., and to hold the oil until otherwise ordered by the court.

Answers having been filed and issue joined, on February 4, 1886, the cause was referred to *Mr. William Schnur*, as examiner and master, whose report showing the controversy, filed on December 6, 1886, was as follows :

By lease for oil purposes dated June 21, 1881, George Sturges, Hattie B. Davis and Jeremiah G. Shaw, by their attorney in fact, Titus S. Emery, leased to Geo. Marsh and John R. Kuhn 105 acres of land situate in Glade township, Warren county and state of Pennsylvania. The parties of the second

---

* Neither the bill, nor the amended bill, nor the answers, appeared in the paper books.

part therein, covenanted " that within thirty days from the date thereof they will commence to drill and explore for petroleum, coal oil, rock or carbon oil, in and under the surface of the land hereinbefore described, and will prosecute such drilling and exploration with due diligence to success or abandonment," etc.  This lease was for the term of fifteen years, at one eighth royalty on all wells producing ten barrels or less, and one fourth royalty on all wells producing over ten barrels per day.  There are quite a number of covenants relating to the number of wells and other matters, but among others are the following, " And in event of discontinuing work for a period of sixty days, this lease shall be forfeited; and further, any failure to perform the covenants herein contained, shall, at the option of the said parties of the first part, work a forfeiture of this demise."  Upon the termination of the lease from any cause, any attorney, at the request of the parties of the first part, might sign an agreement as attorney for second parties for entering in any competent court an amicable action of ejectment for said land.

No operations for oil had been conducted on this land up to August 4, 1883, at which time the lease was renewed to Kuhn and Marsh upon condition that second parties should, in good faith, commence active operations on the property within thirty days from the date of renewal, subject to the terms of the original lease.  J. R. Kuhn paid the sum of fifty dollars for the renewal, which was sent by draft to Mr. Emery; J. A. Weible paid to G. W. Marsh, who went to Mr. Emery to get the renewal, the sum of eighty dollars for expenses.

On August 8, 1883, Kuhn and Marsh assigned to J. A. Weible a one third interest in said lease.  Operations were commenced on said land during the month of August; a rig had been built and other things done, but while they were waiting for machinery a dry hole came in on the south side and another nearly dry on the north side of this lease.  The well was not completed.  Mr. Weible, defendant, says he favored putting a well on the north end of the lease.  J. A. Weible then entered into negotiations with said Emery for a modification of the lease and saw said Emery personally in relation thereto, as will be seen from the following correspondence :

By letter dated March 15, 1884, Weible writes to T. S.

Emery, from Warren, Pa.: " Dear Sir : When you were here last the outlook on your property was not encouraging, and after you left a dry hole on the edge adjoining you came in, and we abandoned the well without completing.   I would like to move the rig to the extreme north end and drill as fast as the weather would permit and get everything moved before the roads break up ; but now, Mr. Emery, I think you should give me a chance at a straight eighth royalty."

To which said Emery replied from Philadelphia, March 17, 1884: " Dear Sir : Your letter of 15th inst., relating to the oil lease on the Shipman farm is before me.   I am willing to modify the lease, as I advised Mr. Brown, the legal adviser of the owner of the land, but I see no good reason for reducing the royalty.   If the property produces good wells the land owners ought to share the profits."

In the meantime other parties had become interested in the territory and were trying to negotiate for the land, as will be seen by a letter from said Emery, from Philadelphia, March 19, 1884 :

" MR. JOHN GALLOWAY, WARREN, PA.:

" Dear Sir : Your letter of the 17th inst., offering to lease the Shipman farm in my charge, for putting down an oil well, is before me.   The Marsh and Weible lease has lapsed by their failure to perform their part of the contract ; but they have applied for another chance.   I feel disposed to be liberal with them, if they want time and will go on in good faith ; if they do not at once come to terms, I will see what can be done for you."

On the same day said Emery writes to J. A. Weible from Philadelphia :

" Dear Sir : I have applications to lease the Shipman farm for oil wells, and as you have abandoned the operations and forfeited your lease, I should feel disposed to treat with them at once, had I not received your letter of the 15th, practically asking for a renewal, at least that was what I construed your letter to mean.   Now, if you wish to renew, I shall expect you to agree to put down one well, in good faith, at once, and unless you do agree to that within a week I shall request Judge Brown to consider the new applications before me, and if either of them are reported to be responsible parties, I shall consider

your lease abandoned and will then be prepared to open new negotiations with other parties."

On March 21, 1884, the following telegram was sent to Mr. Emery:

" On receipt of your first letter, ordered new rig on north end and men at work, which will be completed and drilled as fast as weather will permit.            J. A. WEIBLE."

Thereupon, on March 22, 1884, Mr. Emery writes to John Galloway, to whom he had written the letter of March 19, 1884:

" Dear Sir: Your letter of 21st inst., relating to the proposed lease of the Shipman farm for oil wells is received. I also received a dispatch from Mr. Weible advising me that on the receipt of my letter, a few days since, he ordered a new rig on north end and men at work, which will be completed and drilled as fast as weather will permit. If he goes on in good faith, I am disposed to give him a fair show. Should he again fail to proceed according to contract, I shall declare his lease forfeited, and in that case will be ready to consider new proposals. I have had other proposals than yours to lease the property, but have given terms to no one."

George W. Marsh, at some time after the first well was abandoned, sold his interest in said lease to J. A. Weible; so that the interests in said lease when the second well was commenced stood in J. R. Kuhn one third, and J. A. Weible two thirds.

J. A. Weible testifies that on " March 21, 1884, I told him (Kuhn) I was going to try to get a new lease, and we would have to act quick. I asked him if he wanted to take a third interest with me. He said yes. Kuhn was to pay one third and I two thirds."

The rig of the second well was put up and operations commenced during the latter part of March, under the direction of G. W. Marsh, for Kuhn and Weible.

About this time another oil well was put down on property in the vicinity of this lease by J. A. Gartlan. The oil sand in the Gartlan well was struck on May 5, 1884, and the well was opened on May 9, 1884. Mr. Gartlan says that he, in conversation with Weible, told him that he believed that he had a good well. Said Gartlan further says, " I think there was a conversation between Weible and myself that whoever got his

well down first would give the other information, but I am not clear in my recollection about it." The conversation between Weible and Gartlan, when Gartlan told Weible that he believed he had a good well, occurred, according to Gartlan's testimony, on the 5th of May. Between May 5 and 9, 1884, J. A. Weible sent H. E. Brown, Esq., one of the firm of Brown & Stone, attorneys, to see Mr. Emery to get a new lease. Mr. Brown went as the agent of Mr. Weible, as shown by the testimony. When Mr. Brown saw Mr. Emery, he (Emery) asked said Brown if there was any question about the lease being forfeited, having reference to the lease theretofore made to Kuhn and Marsh, and afterward extended and referred to in the correspondence between said Emery and said Weible, and said Emery refused to give a new lease till the old one was surrendered. Mr. Brown thereupon told said Emery that the old lease had been forfeited, whereupon the old lease was delivered up and canceled, and the said Emery made a new lease to H. E. Brown, Esq., dated May 9, 1884. About May 12, 1884, the said H. E. Brown, Esq., assigned the one half interest in said lease to J. A. Cadwallader and E. F. Johnson, which interest is now held by the Anchor Oil Company, and on the same date said H. E. Brown assigned the other one half interest in said lease to J. A. Weible. The consideration money for the one half interest assigned by said Brown to said Cadwallader and said Johnson, was paid to Weible and not to said Brown. And said Brown, in answer to the interrogatories filed by plaintiff, says : " At the same time I made the assignment mentioned, i. e. to Cadwallader and Johnson, I also assigned the other undivided one half to J. A. Weible. He paid my expenses, and for my time, and agreed to pay a sum to be fixed by himself if the property should prove productive."

The oil well on this lease put down struck oil in paying quantities about May 31, 1884.

The plaintiff filed his bill, and amended bill, in which he in substance alleges that he, Kuhn, was tenant in common with Weible in said lease and renewals ; that the surrender of said lease and rights thereunder by H. E. Brown was fraudulent and void ; that if said Brown acquired any rights to the lease of May 9, 1884, he and others to whom it was assigned with notice of plaintiff's rights, are trustees simply of Kuhn's inter-

est, and prays for relief as shown by the several bills. Defendant Weible's answer sets up a denial of plaintiff's right, and claims that the original lease was forfeited and the renewals thereof abandoned; that H. E. Brown procured the lease of May 9, 1884, for himself, Brown; that he, Weible, acquired his rights to the leasehold from said H. E. Brown.

Interrogatories were also filed and served for discovery to which defendants made answer.

Your master has given careful consideration to the bills, answers, interrogatories and the answers thereto and the evidence in this case. The first question presented is, did Kuhn have any interest in this leasehold? If so, when and how was that interest divested?

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

From all the facts and the law applied thereto, your master is of opinion that Kuhn's interest in said original lease and renewals was good and valid up to the date of the new lease to H. E. Brown. How, then, did the new lease to H. E. Brown affect Kuhn's interest?

H. E. Brown, in his answer to the interrogatories served on him, claims that he got the lease for himself. Is this tenable? Mr. Emery says that he made the lease to H. E. Brown, personally. Mr. Emery, so far as shown by the testimony, is probably sincere. The original lease and correspondence and papers relating thereto were in the possession of Weible. H. E. Brown got the papers from Weible; he was sent with the papers to see Mr. Emery for Weible; Weible paid him his expenses and time in seeing Mr. Emery, and was to pay Brown a sum to be fixed by Weible in case the well proved good. Brown a few days after May 9, 1884, assigns to Weible the one half interest without further consideration; at the same time Brown assigned the remaining half in the new lease to Cadwallader and Johnson, and the consideration therefor was paid to Weible.

From all these facts your master is of the opinion and so finds that H. E. Brown in procuring the lease of Mr. Emery dated May 9, 1884, was the agent of J. A. Weible, and that Kuhn's rights under the original lease and renewals were not affected thereby, and that J. A. Weible as to the one third interest of Kuhn held the same in trust for Kuhn.

Defendant's counsel, Brown & Stone, raise the question that

## Master's Report.

the plaintiff's bill is an ejectment bill and cannot be maintained; that the title being in dispute should be first determined by an action at law.

After due examination of the authorities cited by counsel, and from the fact that your honors have exercised jurisdiction of this cause in granting an injunction to preserve the title papers and evidence of plaintiff from destruction, and overruling the demurrer to plaintiff's interrogatories for discovery, your master is of the opinion that the plaintiff's bill rightly lies in equity. The dispute is not altogether one of possession; so far as that arises, as hereinbefore stated, Marsh went into possession as superintendent, or to take care of the well for Kuhn and Weible, and nothing occurred afterward by which that state of facts was changed by Kuhn or Weible. The evidence disclosed a state of facts which, in the opinion of your master, would be a fraud upon the rights of plaintiff if permitted to stand. The plaintiff's bill, among other things, asks to preserve plaintiff's title papers and prevent their destruction; to perpetuate the evidence thereof, for a discovery, etc., of all which equity has jurisdiction; and it seems well settled that if a court of equity once acquires jurisdiction, it will dispose of every subject of dispute, whether it be one of remedy or of distinct, yet connected topics of dispute.

The question of notice to the Anchor Oil Company of the plaintiff's right to make it trustee with Weible, your master thinks immaterial, because Mr. Weible still has, so far as shown, interest enough, to wit: one half, to make good to Kuhn the one third interest of which Weible is trustee. So far as the interest of W. H. Dufur in this controversy is concerned, it was admitted upon the hearing of this cause by W. G. Trunkey, Esq., that Dufur had no other or greater right than said Weible, and that said Dufur stood in said Weible's shoes.

Your master, therefore, recommends under the view taken that the lease of May 9, 1884, was taken in trust for Kuhn as to the one third, that the court decree:-

1. That the said J. A. Weible convey, as the court may direct, to J. F. Kuhn the two thirds of the one half interest now held by said Weible in the lease from Titus S. Emery, attorney in fact for George Sturges, Hattie B. Davis and Jeremiah G. Shaw, dated May 9, 1884, for the land therein mentioned, which is equal to the one third interest in said lease.

2. That if not already recorded, that said Weible deliver said lease dated May 9, 1884, to W. J. Alexander, recorder of deeds for Warren county, or some disinterested person as the court may direct, for custody or record.

3. That said J. A. Weible account to plaintiff for the oil taken from said leasehold and the expenses thereof, that the same may be divided according to the respective proportions or interests.

To the foregoing report various exceptions chiefly relating to findings of fact, filed by the defendants, were overruled by the master. The exceptions being renewed upon the filing of the report, they were dismissed by the court, BROWN, P. J., without opinion filed, and the master's report confirmed, the defendant Weible to pay the costs from the funds going to him in the hands of the receiver.

Thereupon, the master, who was also the receiver appointed by the order of February 9, 1885, stated and reported an account and recommended the following order and decree :

That the said J. A. Weible pay to J. R. Kuhn the sum of $6,878.24, together with any interest that may have accrued thereon in the hands of the receiver, and that J. A. Weible pay the costs of this accounting.[6]

Exceptions filed to the foregoing final report by both the plaintiff and the defendants were dismissed by the court, BROWN, P. J., May 19, 1888, without opinion filed, the account stated confirmed, and a final decree entered as above recommended by the master.[6]

Thereupon the defendants took this appeal and certiorari, specifying that the court erred:

1. In not finding that the original lease of June 21, 1881, and its renewal of August 4, 1883, were forfeited.

2. In finding from the letters and telegrams between Weible and Emery, in substance, that the forfeiture of the lease of June 21, 1881, and its renewal of August 4, 1883, were waived, and the original lease and renewal reinstated in March, 1884.

3. In taking into consideration in finding the forfeiture waived, the letters from Emery to Galloway.

4. In finding that H. E. Brown took the lease of May 4, 1884, for Weible and Kuhn.

5. In finding that there was an arrangement between Kuhn and Weible by which Kuhn acquired any interest, other than such interest as he had in the original lease of June 21, 1881, and its renewal of August 4, 1883.

6. In entering the final decree of May 19, 1888.[6]

*Mr. W. E. Rice* (with him *Mr. R. Brown, Mr. C. W. Stone* and *Mr. W. G. Trunkey*), for the appellants.

*Mr. Charles H. Noyes* (with him *Mr. Watson D. Hinckley*), for the appellee.

PER CURIAM:

This was a bill in equity in the court below and comes here upon appeal, with a writ of certiorari to bring up the record. It involves questions of fact and account merely, all of which have been satisfactorily adjusted by the master and court below. We are not required to pass upon any question of law, and a discussion of the facts and the items of an account, would be as uninteresting as it would be useless.

> The decree is affirmed and the appeal dismissed at the costs of the appellants.