## Wolf, Executor, vs. Schæffner.

*December 20, 1880 — January 11, 1881.*

WILLS. *(1) Will construed. (2) Duty of executor as to appealing from construction of will. (3) Costs on such appeal.*

1. At the time of the making of a will, and of the testator's death, his estate consisted solely of U. S. bonds, a certificate of deposit, a small amount of currency, and a small amount of wearing apparel, etc. The will gives the use of all the testator's property, "real or personal, of what kind and nature and wheresoever," to the testator's father, during the life of a certain other person; and after the death of such person, bequeaths one hundred dollars to a sister of the testator, "one hundred dollars in *money* and *all my other personal property*" to a second sister, and one hundred dollars to an aunt. It then adds: " *The remainder of all my property* I give to my father;" and provides that if the father shall be dead at the time of the testator's decease, all the property shall go in equal shares to the two sisters and aunt above mentioned, or, if the aunt should also be dead, then in equal shares to the two sisters, their heirs or personal representatives. *Held,* that the words " all my other personal property," in the first legacy to the second sister, must be construed as intended to include only the testator's personal effects *other than the money and securities;* while the latter, except the $300, is the property bequeathed to the father, the testator having no *real* property.

2. Where all the parties interested in getting a different construction of a will from that given by the court having original jurisdiction, are parties to the action and have had their day in court, it is not, under ordinary

circumstances, the duty of the executor to appeal from the judgment of such court.

3. On an appeal from the county to the circuit court, in respect to the construction of a will, taken by the executor as such, an award, by the appellate court, of "costs in favor of the respondent," without further specification, must be regarded as requiring the costs to be paid out of the estate. R. S., sec. 2932.

APPEAL from the Circuit Court for *Sheboygan* County.

The case is thus stated by Mr. Justice TAYLOR:

This is an appeal from a judgment giving construction to the last will and testament of Carl Schæffner, deceased. The following is a copy of the will, omitting the commencement and the attesting clause: "I give, devise and bequeath unto my father, *Edward Schæffner*, the usufruct of all my estate, real and personal, of what kind and nature and wheresoever, as long as my stepmother, Amalie Schæffner, is living with him. After the death of my stepmother, I give, devise and bequeath to my sister Julia Wolf, wife of *Jacob Wolf*, $100; to my sister Stephanie Weinberger, widow of John Weinberger, *one hundred dollars in money, and all my other personal property;* and to my aunt Minna Schæffner (unmarried), in Dartmund, Westphalen, Germany, $100; but, if she should be dead at the time of my decease, I give said $100 to my aunt Caroline Schæffner, also unmarried. The remainder of all my property I give to my father, *Edward Schæffner*. Should my father be dead at the time of my decease, I give all my property in equal shares to my sisters, Julia Wolf and Stephanie Weinberger, and to my aunt Minna Schæffner; or, if she should be dead, to my aunt Caroline Schæffner. If both my aunts should be dead at the time of my decease, their part shall go to my two sisters in equal shares, or to their heirs, executors and administrators forever, for their sole use and benefit; subject, however, to the payment of all debts that I may justly owe to any person or persons at the time of my decease. It is my will that all my said debts be first paid out

of my said property. I do hereby nominate and appoint my brother-in-law, *Jacob Wolf*, of the city of Milwaukee, executor and administrator of this my last will and testament, hereby revoking all former wills by me made."

Letters testamentary were issued upon said will May 7, 1872, and the inventory of the estate shows that the testator died seized of no real estate of any kind, and that his whole estate consisted of United States bonds, of the value of $1,130; certificates of deposit, of the value of $311.40; United States currency, of the value of $33.15; and wearing apparel, etc., of the value of $32.20. The deceased died shortly after making his will, and left surviving him his father, *Edward Schæffner*, the respondent in this action. After considerable legal skirmishing in the county court of Milwaukee county, that court, on the 8th of January, 1875, made an order construing said will as follows:

"That, by the terms of the will, *Edward Schæffner*, father of the deceased, is entitled to the *usufructus* of the whole estate as long as his wife, Amalie Schæffner, is living; and that from and after the time of her death the said *Edward Schæffner* becomes the owner, absolute and forever, in his own right, of all and singular the property belonging to said estate, subject to the payment of the following legacies, to wit: a legacy to Julia Wolf of $100; a legacy to Minna Schæffner of $100; a legacy to Stephanie Weinberger of $100; also subject to a specific devise in favor of Stephanie Weinberger of the following articles of personal property, to wit: One black suit, one woolen jacket, one straw sack, one shawl, one pair overshoes, one revolver, one overcoat, one pair drawers, two linen shirts, two vests, one towel, one linen coat, four towels, four pairs of stockings, six pocket handkerchiefs, one necktie, two brushes, one watch and chain, two hair-brushes, one razor, pocket-knife and screw-driver, and one trunk — valued, in the aggregate, at $32.25, with which amount the executor now stands charged; and the court is of the opinion that

there is no further necessity for administering upon said estate, or continuing the same in court, that the trust by said will created has been carried out, and may, with due and proper regard to all the interests involved, hereafter be dispensed with and discharged, and that a final settlement and distribution of said estate ought to be made."

From that order an appeal was taken to the circuit court of Milwaukee county. The cause was removed from that court to the circuit court of Walworth county; and that court reversed the order of the county court, on the ground that the order construing the will and making distribution of the estate had been prematurely made. From the judgment of the circuit court of Walworth county an appeal was taken to this court, and the order of that court reversed, and cause remanded. See *Appeal of Edward Schæffner*, 41 Wis., 260. On the case being remanded, the venue was again changed to the circuit court of Washington county; and upon a hearing in that court the learned circuit judge refused to give any judgment upon the proper construction of the will, and reversed so much of the order of the county court as directed the executor to pay over the money remaining in his hands, after the payment of the debts of said deceased, to the respondent, upon his giving a sufficient bond, to be approved by the court, conditioned to pay the legacies of $100 each to Minna Schæffner and Stephanie Weinberger, upon the death of Amalie Schæffner, the wife of the respondent. From this decision of the circuit court of Washington county, the executor, the appellant in this case, appealed to this court; and this court reversed the order of the circuit court of Washington county, and remanded the cause, holding that it was the duty of the circuit court to give its judgment upon the construction of the will, and either affirm or reverse the order and judgment of the county court upon that point, as well as upon that ordering the payment of the estate to the respondent upon his giving security as ordered. Upon the cause being

again remanded, the venue was again changed, upon the application of the executor, to the circuit court of Sheboygan county; and upon the hearing in that court judgment was rendered giving the same construction to the will which had been given to it by the county court of Milwaukee county, and affirming the order of said court so far as such order gives construction to said will and orders distribution of the estate according to such construction.

To this finding and judgment of the circuit court the executor filed exceptions, and appeals again to this court, and alleges that the court erred in its construction of the provisions of said will.

*Samuel Howard*, for appellant:

The words "personal property" include all manner of property not real in its nature. It was formerly the general rule in courts of equity, in construing wills, that general words following a specific enumeration are limited in their operation to matters *ejusdem generis*. But the better rule now seems to be, to give words of a comprehensive import their full extent of operation, unless particular words follow those more general. 1 Jarman (ed. 1861), 724; 2 Redf., 112–114, 118; *In re Sharman*, L. R., 1 P. & D., 661; *In re Cadge*, id., 543; *Carr v. Dings*, 58 Mo., 400; *Attree v. Attree*, L. R., 11 Eq., 280; *Morris v. Henderson*, 37 Miss., 492. The word "other," as connected with a residuary clause, does not have the effect to limit its extent. *Martin v. Glover*, 1 Coll. C. C., 269; *Rogers v. Thomas*, 2 Keen, 8. And see 2 Redf. on Wills, 101; *Hodgson v. Jex*, L. R., 2 Ch. D., 122; *Browne v. Coggswell*, 5 Allen, 556. But if the general words following the particular ones are to be held as applying to things of the same kind as those which precede (*Cleaver v. Cleaver*, 39 Wis., 102), all the estate would pass to Stephanie Weinberger (subject to the legacy to Minna Schæffner), except the few items of wearing apparel, etc. As to the meaning of the word "money," see *Morton v. Perry*, 1 Met., 446; *Dabney v. Cottrell*, 9

Gratt., 572; 1 Jarman, 730; 2 Redf. on Wills, 103 et seq. The gift of the remainder of all his property to *Edward Schæffner* would indicate that the deceased intended, at some time after the making of the will, to acquire real property. This would account for the insertion of the general residuary clause, even though in fact the testator had no residue. Wigram on Wills, 127. A general residuary clause at the end of the will is commonly construed as intended for nothing more than a disposition of those portions of the estate which have not already been disposed of; and where nothing remains undisposed of, it will be held to have no operation. It will not be allowed to defeat a prior gift in the will. *Allum v. Fryer*, 3 Q. B., 442; *Roe v. Nevill*, 11 id., 466; 1 Redf., 446; 2 id., 115–118.

For the respondent there was a brief by *Cotzhausen, Sylvester & Scheiber*, and oral argument by *Mr. Cotzhausen.*

TAYLOR, J. The learned counsel for the appellant insists that the proper construction of the will gives the use of the estate of the deceased to his father, the respondent, during the time his present wife, Amalie Schæffner, shall live with him; that after her death the estate is bequeathed as follows: $100 each, to his sister Julia Wolf and his aunt Minna Schæffner, while the whole of the residue of the estate goes to his sister Stephanie Weinberger, under the second clause of the will, "to my sister Stephanie Weinberger, widow of John Weinberger, $100 in money, and all other personal property;" and that the respondent would take nothing under the residuary clause. We heartily join in the regret expressed by the learned counsel for the appellant, that this litigation has lasted so long; and we also fully agree with him that he has labored just as faithfully as though the estate had been larger; but we cannot fully agree that the responsibility of this protracted litigation is to be charged to the judges of the several courts which have had it under consideration.

We think, considering the cardinal rule which must govern in the construction of wills, viz., the intention of the testator, the construction given to this will by the county court of Milwaukee county, and affirmed by the circuit court of Sheboygan county, is the only reasonable construction that can be given to the same; and that the executor, the appellant, would have been fully justified in permitting such construction to stand unquestioned, without an appeal to the higher courts, leaving such appeal, if any was desired, to the legatee who might have considered her rights prejudiced thereby. Stephanie Weinberger was a party to the proceedings in the county court, and bound by them unless she appealed. This was so held on the first appeal in this case, 41 Wis., 614. She was the only person interested in a construction of the will different from that given to it by the county court; and whilst we do not hold that the executor ought not in any case to appeal from a judgment giving a construction to a will, where all the persons interested in getting a different construction from that given by the court having original jurisdiction are parties to the action and have had their day in court, we are clearly of the opinion that it is not his duty to do so unless there be circumstances in the case which call for his interference, as where the parties interested in a different construction are infants, insane, out of the jurisdiction of the court, or perhaps where, on account of poverty, they may be unable to carry on the litigation in their own behalf.

It is urged by the learned counsel for the appellant, that the bequest to Stephanie Weinberger is a bequest of all the property owned by the deceased at the time of his death, not being real estate, subject to the payment of the two bequests of $100 each, and the use of the whole estate by the father during the time his wife, Amalie, should live with him. We think this construction ought not to be given to that clause of the will: *First*, because the language of the clause indicates that such was not the intention of the testator. The language is, " To

my sister Stephanie Weinberger, widow of John Weinberger, $100 in *money*, and all other *personal property*." If the testator had intended to give to his widowed sister all his effects except his real estate, there would have been no propriety in giving her $100 in money first, and then all other personal property; but the natural way of expressing an intention of making her the residuary legatee of all his personal effects would have been to have so stated the fact, without accompanying it with a bequest first of $100 in *money*. The use of the word " money " in the clause, followed by the words " all other personal property," clearly indicates that in the mind of the testator there was a difference between money and personal property; and that he used the words " personal property " in a restricted and limited sense, as not including money, or obligations for the payment of money, which, in common parlance, are treated as money. The words " personal property " in that clause were clearly intended to be limited to goods and chattels of the ordinary kinds. *Second*. We think this clause was not intended to give to Stephanie all the personal estate of the testator, because there is another residuary clause in the will, giving the residue of his estate to his father, which follows the specific bequests, and this last residuary clause becomes void and of no effect if the bequest to Stephanie carries all the personal estate. This fact is considered a good ground for limiting the significance of the general words in the bequest to Stephanie. Upon this subject Redfield says: " One of the most common grounds of inferring the limited signification .f general terms, which might, in their more enlarged sense, include the general residue of the estate, or of the personal property, is, that in some other portion of the instrument a clearly-defined residuary clause is found, which, as no testator would designedly create two residuary legatees, must very clearly show that one or the other was not so intended." 2 Redf. on Wills, 113, and cases cited. But it is urged against this construction, that the two residuary clauses are not incon-

sistent, and that the first takes the residue of the personal estate, and the father, under the second, might take the residue of the real estate, if there were any. We think these clauses ought to be construed with reference to the condition of the testator's estate at the time he made the will, as well as at the time of his decease. The evidence shows that when this will was executed the testator had no real estate; and, as he must have contemplated that he might die leaving his estate in the same condition that it was when he executed his will, he would not be likely to put in a residuary clause in favor of his father, which, under the construction claimed by the appellant, would be void both when he made it and when he died. *Third.* The other distribution made of his estate, in case of the death of his father before his own decease, very clearly shows that he did not intend to make his sister Stephanie the chief beneficiary under his will. In that case he makes his sister Stephanie the recipient of the same share of his estate which he gives to his sister Julie and his aunt Minna. This latter distribution of his estate shows that he intended, in all the provisions of his will, to make his two sisters and his aunt Minna equal recipients of his bounty. In the first part of the will, in which he provides for his father by the residuary clause, he gives the sisters and aunt each $100, giving to Stephanie his personal property, other than his money, in addition; the personal property being of very small value, and consisting only of a limited quantity of wearing apparel. And in case the father is not living at his death, then, in his second distribution of his estate, he makes the three equal recipients of his bounty, not giving his sister Stephanie the advantage even of his wearing apparel.

We are very clear that reading all the provisions of the will together, with the knowledge that the testator had no estate except money and goods and chattels at the time the will was made, and at the time of his death, the construction given to it by the learned judge of the county court of Milwaukee

county was the only reasonable and just construction which could be given to the same, and that the judgment of the circuit court of Sheboygan county affirming that construction must be affirmed.

The learned counsel for the appellant objects to the judgment against the appellant for costs, and suggests that under the judgment the costs could be collected out of his own proper estate, and are not to be collected out of the estate which he represents. As he prosecuted this case in his character as executor and not as an individual, under the provisions of section 2932, R. S. 1878, and as the circuit court failed to direct that the costs should be paid by the appellant personally, for mismanagement or bad faith in such action or defense, the costs must be paid out of the estate which he represents; and the judgment of the circuit court is not in that respect injurious to the rights of the appellant.

*By the Court.*— The judgment of the circuit court is affirmed.