HANVY, administrator, *v.* MOORE, administratrix, *et al.*

1. In a proceeding by a legatee for an accounting of an estate reduced to cash, other legatees are not necessary parties. But where the moving legatee asserts a claim against the estate, dependent upon a construction of the will, it is not error to allow the other legatees to intervene as parties for the purpose of contesting such claim.

2. A testator, possessed of real and personal estate, died leaving a widow and eight children. He disposed of the residue of his estate as follows: "I will that the residue of my estate be distributed equally among my legal heirs." *Held*, that the widow was not included in the phrase "legal heirs," and did not share in the residue.

3. In the second item of his will the testator gave to his wife, Georgia Brown, a year's support to be taken from his general estate, and all of his household and kitchen furniture, and certain lots of land "to her during her life or widowhood; on the event of her death or the termination of her widowhood the same to go to and be equally divided among my heirs, to wit: Georgia Brown, Tony Moore, Mark A. Brown, Carrie Harris, and Ella Stokeley. If my son Mark A. Brown, or my daughter Tony Moore, should die after my death and before the death of my wife, I desire that their parts of the above-named property shall revert to my general estate and be divided among my heirs." *Held*, that inasmuch as the wife is expressly named as one of those to take in remainder, she takes an estate for life or widowhood in the land devised and also one fifth of the fee in remainder.

4. Where the terms of a will are plain and unambiguous, parol testimony as the sayings or statements of the testator that he intended to dispose of his property in a certain way, and to certain persons, different from that expressed in the will, will be rejected.

OCTOBER 14, 1913.

Citation. Before Judge Edwards. Paulding superior court. August 8, 1912.

*A. L. Bartlett, A. J. Camp,* and *C. D. McGregor,* for plaintiff.

*T. W. Rucker, J. J. Northcutt, Harris & Harris,* and *W. E. Spinks,* for defendants.

EVANS, P. J. L. L. Brown died testate, leaving a widow and eight children, all of whom were legatees under his will. The widow filed in the court of ordinary, against the executor of Brown, a petition for settlement. The executor answered that the widow had been fully settled with; and the children filed separate objections to the effect that the widow did not take under the 2d and 6th items of the will. An appeal was taken to the superior court. The widow died, and her administrator was made a party. The plaintiff objected to the allowance of an order making the legatees parties to the suit. In her petition she alleged that she

was one of the legal heirs of her husband and entitled to share in the residue of his estate, devised in item 6. The court dismissed this allegation on demurrer. In their intervention the legatees averred that it was the testator's intention to limit the interest in the land devised in the 2d item to the widow for life, and that the inclusion of her name as a remainderman was the result of a mistake. The court refused to strike this allegation on motion of the plaintiff, and submitted that issue to a jury, who returned a verdict adversely to the plaintiff.

1. A legatee may call the executor to a settlement of an estate which has been reduced to cash, without making the other legatees parties to the action. Civil Code, § 5417. While this is true, we can not see any objection to legatees voluntarily making themselves parties so as to contest the liability of the estate to the moving legatee. Though not necessary, they are proper parties.

2. The sixth item of the testator's will was as follows: "I will that the residue of my estate be distributed equally among my legal heirs." The testator left surviving him a widow and eight children. The court ruled that under this item the children of the testator took the residuary interest in the estate, to the exclusion of the widow. At common law the widow did not take any interest in the land as an heir at law. It is contended that our statute of distribution has altered the common law so as to make the widow an heir at law. Our statute declares that upon the death of the husband without lineal descendants the wife is his sole heir; if there are children, or those representing deceased children, the wife shall have a child's part, unless the shares exceed five in number, in which case the wife shall have one fifth part of the estate. If the wife elects to take her dower, she has no further interest in the realty. Civil Code (1910), § 3931. It has been held that this statutory provision must be construed in connection with paragraph 3 of Civil Code § 5249, which declares that dower may be barred by the election of the widow, within twelve months from the grant of letters testamentary or of administration on the husband's estate, to take a child's part of the real estate in lieu of dower; and that a widow does not become vested as heir at law with an absolute estate in any portion of the property which belonged to her deceased husband, but merely has the right to take a child's part, or in certain cases one fifth thereof.

If she does not elect so to do within twelve months from the grant of letters of administration upon his estate, such right is lost; and, so far as the realty is concerned, she is remitted to the right of obtaining her dower by applying therefor within the time prescribed by law. *Farmers Banking Co.* v. *Key,* 112 *Ga.* 301 (37 S. E. 447). The purpose of the statute, so far as real estate is concerned, is not to confer upon the widow any absolute right of inheritance, where the deceased leaves children, but to give her an election to claim a child's part (or, if the children exceed five in number, then one fifth) of the estate of her deceased husband, or to have an assignment of dower in all the lands of which he died seized and possessed. The question was early submitted to this court as to whether, under the statutes codified in the sections to which we have adverted, the widow of an intestate was entitled to have advancements made by the testator to his children brought into hotchpotch for her benefit; and it was held that she had no such right, and that if she died within a year after administration on the estate of her husband, without having elected to take a child's part of the real estate, her executor could not recover any share therein after her death. *Beavers* v. *Wynn,* 9 *Ga.* 189. It was said in *Snipes* v. *Parker,* 98 *Ga.* 522 (25 S. E. 580), that "if a man dies intestate, leaving a widow and children, the title to his realty vests in the latter, subject only to the former's right to take a child's part, or have dower assigned therein." This ruling was expressly affirmed in *Farmers Banking Co.* v. *Key,* supra. The decisions of this court proceed upon the footing that the statutory provision for the wife in the real estate of her deceased husband, where children are left, is not that of strict inheritance, but an allowance, under the law, of a portion of the realty equal to a child's part, or, if the children exceed five in number, to a fifth part of his estate, available only by affirmative action on her part within twelve months from the date of administration, as a substitute for her common-law right of dower. *Sumpter* v. *Carter,* 115 *Ga.* 893 (42 S. E. 324, 60 L. R. A. 274). When the testator used the expression "legal heirs," in the absence of anything in the will to the contrary it will be presumed that he had in mind those who would take naturally by inheritance, and not to embrace the widow, who was given by statute an elective right to a child's part in lieu of dower. An Iowa statute provides that

if an intestate leaves no issue, one half of his estate shall go to his parents and the other half to his wife. A decedent at his death had a policy of life insurance payable to "his legal heirs." He left surviving him a widow and one child. It was held that the amount of the policy should go to the child. In the opinion the court said: "The distinction between the word 'widow' and the word 'heir' is marked in common parlance. No one having children speaks of his wife, in contemplation of her survivorship, as his heir; but it is believed, and it is universal, that she is referred to as 'widow' and the children as 'heirs.' While technically, and in the single instance stated in the statute, a widow may become a legal heir of her deceased husband, our conclusion is that, whether used in their technical or general sense, the words 'legal heirs' were not intended, and should not be construed, in this case, to include the widow." Phillips *v.* Carpenter, 79 Iowa, 600 (44 N. W. 898, 899).

In *Gibbon* v. *Gibbon,* 40 *Ga.* 562, an apparently contrary rule was promulgated. In that case a testator at the date of his will had a wife, a son, and a daughter, and brothers and sisters of both the whole and half blood. In his will he gave several legacies to his daughter for life, and at her death to her children, and if she died childless, then to the testator's "heirs of the full blood." The daughter died childless before the testator died. It was held that by the phrase "heirs of the full blood" the testator meant his statutory heirs, including his wife. The opinion in that case was pronounced by McCay, J., who based his conclusion upon a construction of the rules of inheritance now embodied in the Civil Code, § 3931, without taking into account the statute now contained in § 5249, par. 3, relating to the bar of the wife's dower. Brown, C. J., concurred, but wrote no opinion. Warner, J., dissented. In the dissenting opinion it was said: "If there are children or descendants of children, the wife is not declared, eo nomine, to be an heir of the intestate. It is true, provision is made for her; she takes a child's part of the estate, unless the shares exceed five in number, in which case she takes one fifth of it. Thus it will be seen, when there are children or the representatives of deceased children, the wife does not inherit equally as an heir of the intestate." Judge McCay reached his conclusion both from an interpretation of the will and the statute, and drew

from the will certain illustrations evincive of the testator's intent to include the widow within the phrase "heirs of the full blood." We do not think that case should be extended beyond its peculiar facts; because the court drew from the testator's will a conclusion that such a construction was intended by the testator, because of an omission to consider the cognate law on the subject, because it was concurred in by only two Judges, and, further, because it is not in harmony with a construction of the statute as given in prior and subsequent decisions in this court.

In view of the special provision made by the testator for his wife in the second item of his will, and his general testamentary scheme, we believe that his conception of the words "legal heirs" embraced only his children and their descendants, to the exclusion of the widow.

3. By the second item of his will the testator gave to his "beloved wife, Georgia," a year's support to be taken from his general estate, and also all of his household and kitchen furniture, and certain lots of land "to her during her life or widowhood; on the event of her death or the termination of her widowhood the same to go to and be equally divided among my heirs, to wit: Georgia Brown, Tony Moore, Mark A. Brown, Carrie Harris, and Ella Stokeley. If my son Mark A. Brown, or my daughter Tony Moore, should die after my death and before the death of my wife, I desire that their parts of the above-named property shall revert to my general estate and be divided among my heirs." This item of the will is plain and unambiguous. The testator, in addition to giving his wife a year's support, gave her a life-estate in certain described land, and specifically gave her a remainder interest in fee to be divided between herself and four children, with a reversion to his estate of the interest of two named children should they die after the testator and before the wife. This contingency did not happen, as these children survived the wife. So we hold, that, under this item, Mrs. Georgia Brown took a life-estate in the devised land, and also a one-fifth estate in fee in the remainder. It is not unusual for a life-tenant to be interested in the remainder estate. And, whatever may have been the testator's intent with respect to his wife's share in the remainder estate, we can only give effect to that intent expressed by him in clear and unambiguous words.

4. The court admitted parol evidence tending to show that the inclusion of the wife's name as a remainderman was through the mistake of the scrivener. The rule is clear that when the terms of a will are plain and unambiguous, parol testimony as to the sayings or statements of the testator that he intended to dispose of his property in a certain way, and to certain persons, different from that expressed in the will, will be rejected. *Smith* v. *Usher*, 108 *Ga.* 231 (33 S. E. 876); *Napier* v. *Little*, 137 *Ga.* 242 (73 S. E. 3, 38 L. R. A. (N. S.) 91, 26 Ann. Cas. (1913A) 1013).

*Judgment reversed. All the Justices concur.*