THE SOUTHINGTON BANK AND TRUST COMPANY, ADMINISTRATOR, *vs.* THE AMERICAN BAPTIST HOME MISSION SOCIETY ET ALS.

First Judicial District, Hartford, March Term, 1921.

WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, JS.

A testatrix in her will gave pecuniary legacies to three of her nieces, to two nephews and to the children of a deceased nephew, and then gave the residue of her estate to two missionary societies. In a codicil to this will she stated that she did not intend that her "jewelry, household furniture, and personal estate" should be included in the residue given to the missionary societies, but desired that they should be given to her nieces and divided between them as they saw fit. She died, leaving seven nieces and an estate consisting of real property valued at $6,000 and personal property of an amount in excess of furniture and jewelry and that needed to pay the pecuniary legacies, of about $25,000. *Held* that the will and codicil, when read in the light of the circum-

stances surrounding the testatrix, showed that she intended by the codicil to give to her nieces only her jewelry, household furniture, and such tangible personal property, as her clothing, as was personally used by her, and that the remaining personal property should go to the missionary societies.

Evidence of the circumstances surrounding the testatrix, including her relations with her nieces, and her interest in the missionary societies, was properly admitted in order to put the court as near as may be in her condition in respect to her property, and the situation of her family, for the purpose of rightly understanding the meaning of the words of her will.

Argued March 8th—decided April 5th, 1921.

SUIT to determine the construction of the will and codicil of Sarah A. Nichols of Southington, deceased, brought to and tried by the Superior Court in Hartford County, *Maltbie, J.;* facts found and judgment rendered in favor of the Baptist missionary societies, from which several of the nieces of the testatrix appealed. *No error.*

The will reads as follows:—

"First—I direct that my just debts and funeral expenses be paid by my Executor hereinafter named.

"Second—I give and bequeath to my niece Anna M. Kibbey of Newport, N. H., the sum of one thousand dollars (1,000) to my nieces Leila Pettingill and Hattie Hurd, and to my nephews Mylon A. Kibbey and Fred B. Kibbey to each the sum of five hundred (500) dollars. I further give and bequeath to Eleanor, Ethel, Orin, and Wm. Kibbey, children of my nephew Arthur Kibbey, deceased, the sum of five hundred (500) dollars to be divided among said children share and share alike. I direct that all collateral inheritance tax which may be chargeable against the above legacies be paid as a charge against my estate.

"Third—All the rest, residue and remainder of my estate, I give, devise and bequeath as follows, viz: two thirds 2/3 to the American Baptist Foreign Mission

Society and the remaining one third to the American Baptist Home Mission Society of New York City to be used for the general purposes of said societies.

"Fourth—I appoint Mylon Kibbey and James H. Pratt to be Executors of this my last will and testament, and request that no probate bond be required of them as Executors."

The codicil reads as follows:—

"Southington, April 30th, 1918.

"To Mylon Kibbey and Jas. H. Pratt Executors of my will. I do not intend that my jewelry, household furniture, and personal estate shall be included in the rest of my estate given to the Missionary Societies. I desire that they shall be given to my nieces & divided between them as they see fit."

The will was executed by the testatrix late in 1917, but when she personally wrote the codicil on April 30th, 1918, she changed the date of the will to April 30th, 1918.

The following facts were proven, the objection of the defendants to their admission being overruled and an exception duly taken:—

A large part of the property inventoried in the estate of the said Sarah A. Nichols was inherited by her from her husband, Enoch F. Nichols, who died in 1913.

The defendants Lorraine S. Richardson, Lillian A. Richardson, Frances S. Fitch, Anna M. Kibbey, Alma Messer, Leila S. Pettingell and Hattie A. Hurd, were all blood relatives of the said testatrix, Sarah A. Nichols, and were not related by blood to her said husband, Enoch F. Nichols.

The defendants Alma Messer and Hattie A. Hurd visited the testatrix very little, if at all, during her life. The defendant Frances S. Fitch was the wife of a New York practicing physician and resided in Southington. The defendant Leila S. Pettengill occasionally visited

the testatrix during her life. The defendants Lorraine S. Richardson and Lillian A. Richardson were accustomed to stay with the testatrix for about half of each year.

The testatrix, Sarah A. Nichols, was a woman of firm purpose and very positive in her opinions. She had been for a quarter of a century or more a member and regular attendant at the Baptist Church in Southington, her home. She had shown particular interest in its missionary organizations, had been a regular attendant at their meetings, and for twenty years or more had been president of one of them. She had been very active in endeavoring to arouse the interest of others in the work of the missionary societies. Her very great interest in the missionary societies continued without abatement to the day of her death.

The testatrix was of a very charitable disposition, giving liberally in proportion to her means at all times to all charitable objects, rendering a very considerable amount of personal charitable service to needy families in her home town of Southington, and giving so liberally of her means as at times to stint herself in the very necessities of life.

A previous will, executed by her in 1913, was in substantially the same form and of substantially the same effect as the will executed in 1917, quoted above. The earlier will of 1913 had been drafted for her by the judge of the Court of Probate for the probate district of Southington, who was also a practicing attorney at law; but the will of 1917 was written by herself, using the will of 1913 as a model.

The following facts were alleged in the complaint and admitted:—

"The personal estate of said Sarah A. Nichols, at the time of her decease, exclusive of jewelry and household furniture, consisted of cash on hand $45.66; cash

in bank $75.77; deposits in sundry savings-banks aggregating $27,358.86; 10 shares of a manufacturing stock worth $380; a claim for a balance unpaid upon the sale of property $500; and real estate worth $6,000. The household furniture was appraised at $315.80, and the jewelry at $130.

"The defendants Miss Lorraine S. Richardson, Miss Lillian A. Richardson, Miss Anna M. Kibbey, Mrs. Alma Messer, Mrs. Leila S. Pettingill, Mrs. Hattie A. Hurd, and Mrs. Frances S. Fitch, are all nieces and together constitute all the nieces of the said Sarah A. Nichols."

The question presented to the trial court arose out of the construction of the codicil, and was as to whether the nieces of the deceased take all of the personal estate of deceased under the codicil, or whether the personal estate, exclusive of the jewelry and household furniture, passes to the missionary societies under the third item of the will.

*Albert J. Marks*, with whom, on the brief, was *Edward W. Broder*, for the appellants (defendants Anna M. Kibbey *et al.*).

*Ralph O. Wells*, for the appellees (defendants Baptist missionary societies).

Curtis, J.  The first question that naturally presents itself for decision is whether the evidential facts, admitted by the court to aid in the construction of the will and codicil, were properly admitted.

The validity of the codicil was not questioned.

The appellants claimed in the trial court that the words "personal estate," used in the codicil, in their strict and primary acceptance, mean all the personal property of the testatrix as distinguished from her

real estate, because "one of the fundamental rules in the construction of wills is that the testator is always presumed to use the words in which he expresses himself according to their strict and primary acceptation, unless from the context of the will it appears that he has used them in a different sense." *Leake* v. *Watson,* 60 Conn. 498, 508, 21 Atl. 1075.

The appellants claimed, therefore, that evidence of the circumstances surrounding the testatrix could not be admitted to vary this claimed strict and primary significance of the words "personal estate."

The appellees claimed that the words "personal estate" in the codicil, if read in the light of the context of the will and codicil and the circumstances surrounding the testatrix, would clearly appear to have been used in the sense of personal effects, that is, tangible personal property used in her life by the testatrix.

The will and codicil alone, taken together, do not unmistakably disclose the testatrix's intention in her use of the term "personal estate" in the codicil.

Under the accepted rules of testamentary interpretation, such a construction as the appellees claim was possible. If the circumstances surrounding testatrix, which the appellees claimed could be proven, tended to disclose the testatrix's intention, then proper evidence of such circumstances was admissible. *Fritsche* v. *Fritsche,* 75 Conn. 285, 287, 53 Atl. 585.

We said in *Thompson* v. *Betts,* 74 Conn. 576, 579, 51 Atl. 564: "The court may, by evidence of extrinsic facts other than direct evidence of the intention of the testator, put itself as near as may be 'in the condition of the testator in respect to his property, and the situation of his family,' for the purpose of rightly understanding the meaning of the words of his will."

In *Ruggles* v. *Randall,* 70 Conn. 44, 48, 38 Atl. 885, we said: "As a general rule its primary legal meaning

should be given to every word in a will, unless the context, when read in the light of the circumstances surrounding the testator, shows clearly that it was used in a different sense."

The following cases illustrate the claim of the appellees that the words "personal estate," as used in the codicil, may be shown by the context and the circumstances surrounding the testatrix to have been used in a sense more limited than "all the personal property," which the appellants claim is the strict and primary meaning of the words: *Bond* v. *Martin,* 25 Ky. Law Rep. 719, 76 S. W. 326; *Dole* v. *Johnson,* 85 Mass. 364; *Johnson* v. *Goss,* 128 Mass. 433; *Tallman* v. *Tallman,* 3 Misc. Rep. 465, 23 N. Y. Supp. 734; *Wolf* v. *Schaeffner,* 51 Wis. 53, 8 N. W. 8.

The trial court properly admitted evidence of the circumstances surrounding the testatrix.

With the will and codicil and the circumstances surrounding the testatrix before it, did the trial court rightly hold that the words "personal estate" in the codicil meant "personal effects"?

We are satisfied that the trial court rightly so decided.

The testatrix owned real estate worth $6,000, bank deposits to the amount of $27,434.63, and cash, shares of stock, and an unpaid debt, aggregating $925.66; also household furniture appraised at $315.80, and jewelry appraised at $130. Her clothing was not inventoried.

Under her will she gave to three nieces an aggregate of $2,000, and to two nephews and the children of a deceased nephew an aggregate of $1,500. The remainder of her property she gave to two Baptist mission societies. The claim of the appellants, that the words "personal estate," as used in the codicil, include all the estate except the real estate, involves an assumption that the testatrix intended by her codicil to revoke her

large gifts of personal property to the Baptist mission societies and substitute her seven nieces in their place as the main objects' of her bounty.

The informal character of the codicil designed, on this assumption, to make so radical a departure in the purpose of the will, at once raises a doubt in the mind of an examiner of the will and codicil that the testatrix entertained such a radical purpose. If such was her purpose, would she speak ·in the codicil of .her bank deposits, stock, and unpaid debt . as "they," and provide that her nieces should divide "them" as they see fit?

It seems incredible that a testatrix who knew how to draw a will should have provided for such an absolute change of purpose in the destination of over $25,000 in personal property, in such terms as are disclosed by the last sentence of the codicil, which reads: "I desire that they [jewelry, household furniture and about $25,000 in money] shall be given to my nieces and divided between them as they see fit."

We turn to the circumstances surrounding the testatrix, as disclosed by the finding, to discover an explanation for such a reversal of purpose in the disposition of her estate. Had she lost interest in Baptist missions or lost confidence in the two Baptist mission societies to which she gave so largely in her will?

The finding discloses the contrary, as appears .in paragraph six, which reads: "The testatrix, Sarah A. Nichols, was a woman of firm purpose and very positive in her opinions. She had been for a quarter of a century or more a member and regular attendant at the Baptist Church in Southington, her home. She had shown particular interest in its missionary organizations, had been a regular attendant at their meetings, and for twenty years or more had been president of one of them. She had been very active in endeavoring to

arouse the interest of others in the work of the missionary societies. Her very great interest in the missionary societies continued without abatement to the day of her death."

Furthermore, it appears from the finding that her purpose to make the two Baptist mission societies the principal objects of her bounty was a fixed purpose, since it had existed as early as 1913, when a will substantially to the same effect was executed by her. Was there anything in her relations with her nieces that would account for the reversal of her purpose to make the two Baptist mission societies the main objects of her bounty?

The finding discloses no such explanation. If we attach to the words "personal estate" in the codicil, the meaning of "personal effects," including therein such tangible property as was used by her in her life, as her clothing, the codicil and will become intelligible and consistent in all their parts.

It is not improbable that she would desire to change the destination of her household goods, jewelry, and clothing from the mission societies to her nieces; it is not improbable that she would do this in so informal a manner as this codicil discloses. It is credible that she would speak of such property in the terms used in the last sentence of the codicil, where she says: "I desire that they [household furniture, jewelry and tangible property used by me] shall be given to my nieces and divided between them as they see fit."

Further, the redating of the will so as to make both will and codicil bear the same date, indicates that the codicil was not intended as a substantial revocation of the will, but was intended to be consistent with its main purpose.

These considerations satisfy us that the will and codicil, when read in the light of the circumstances

surrounding the testatrix, show clearly that the testatrix intended by the codicil to give to her nieces only her jewelry, household furniture, and such tangible personal property (as her clothing) as was personally used by her.

There is no error.

In this opinion the other judges concurred.