THOMAS C. STEARNS, EXECUTOR, *vs.* HAROLD C. STEARNS ET ALS.

Third Judicial District, New Haven, June Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

Although the object sought in the construction of wills is the intent of the testator, it is nevertheless the intent as expressed in the language used; and if that is not ambiguous, either as to the nature of the estate intended to be devised, or as to the person intended as the devisee, no extrinsic evidence is admissible to show a different and unexpressed meaning or intention on the part of the testator.

Stearns v. Stearns.

The term "personal estate" is ambiguous to the extent that it may mean personal property of every kind and description, or it may merely mean personal effects such as clothing or jewelry, and if the face of the will does not disclose the testator's meaning, extrinsic evidence may be received to determine which of these he intended; but the term never embraces real property, as well as personal property, nor is proof that such was the testator's intention admissible.

Parol evidence of intent is never admissible to supply a possible defect or omission in a will occurring through the mistake or inadvertence of the testator or his scrivener.

The testatrix, after providing legacies for her children, left "all the rest, residue and remainder of my personal estate to my husband." At her death, her personal estate was valued at $4,729 and her real estate at $15,500. In the present suit for the construction of this residuary clause, the trial court provisionally admitted evidence for the advice of this court, and found facts therefrom, to the effect that the testatrix and her husband made mutual wills in pursuance of an agreement that the entire estate of each, both real and personal, with the exception of legacies to their children, should be left to the other; and that the scrivener, being so instructed, drew both wills, including the one in question. Held that this evidence was inadmissible to explain the term "personal estate;" and that, therefore, the real estate was not included in the residuary clause, and was distributable as intestate estate.

It appeared that the husband of the testatrix had not filed in the Court of Probate within two months after the time limited for exhibiting claims against the estate, an election in writing under § 5055 of the General Statutes, as to whether he would accept or reject the provisions of the will in lieu of his statutory share. Held that, however unfortunate the result, the husband could take none of the real estate by distribution, since the statute explicitly provides that, upon his failure to file his election, he "shall be taken to have accepted the provisions of the will and shall be barred of said statutory share."

Argued June 3d—decided July 30th, 1925.

SUIT to determine the construction of the will of Fannie Nash Stearns, late of Westport, deceased, brought to the Superior Court in Fairfield County and reserved by the court, *Nickerson, J.,* upon an agreed statement of facts, for the advice of this court.

Fannie Nash Stearns died on February 13th, 1919,

leaving a husband, Thomas C. Stearns, to whom she was married December 16th, 1891, and as her next of kin the five children who are with the husband parties defendants in this action, and leaving a will which was duly admitted to probate. Thomas C. Stearns was named as executor in the will and duly qualified and is the plaintiff in this action. The testatrix at the time of her death owned and possessed personal property of the value of $4,729.06 and real estate of the value of $15,500. The executor has on hand for final distribution all of the real estate, and personal property of the value of approximately $1,000. The husband, the two minor children, and also Margaret Stearns, one of the five children, have occupied the homestead of the testatrix since her death. Another of the children, with his wife, occupied part of the homestead as a separate family unit from the date of the death of the testatrix for a time thereafter. The personal estate of the testatrix is not sufficient, after the payment of the debts and charges, to pay the cash legacies provided in clause two of the will, which is as follows: "I hereby give, devise and bequeath to each of my children, living at the time of my decease, which may be in being or which may be born hereafter, or to the representative or representatives of any that may be deceased, the sum of five hundred dollars." Thomas C. Stearns, husband of the testatrix, made no election in writing as to whether he would accept or reject the provisions of the will in lieu of his statutory share as husband. The clause in the will upon which the advice of this court is asked is the third, being the residuary clause, and reading as follows: "I hereby give, devise and bequeath all the rest, residue and remainder of my personal estate remaining after the payment of my debts and the legacies as hereinbefore provided, to my husband Thomas C. Stearns."

The court recited at length certain testimony, and then made this finding: "14. If such testimony . . . is admissible, it is found true, and from the same the following additional facts are found." We summarize these facts as follows: The testatrix and her husband, Thomas C. Stearns, agreed with each other to make mutual wills, that each would make a will giving a cash legacy to each of their children living or that might be born to them thereafter, and then providing that all of the rest of the estate of each should be bequeathed and devised to each other. Pursuant to this agreement they went to a scrivener and together instructed him as to this agreement and instructed him to draft mutual wills for the purpose of carrying out this agreement. The testatrix was present with her husband at this interview with the scrivener and the husband did most of the talking, to all of which she acquiesced. Thereupon the scrivener drafted wills for both the testatrix and her husband. Both the testatrix and her husband understood that the wills of the testatrix and her husband included all of their estates and each believed that by these mutual wills each had given to the other all the residue of their respective estates after the cash legacies to their children. In the course of the conversation with the scrivener the testatrix, Mrs. Stearns, stated that she wanted to make her will in such a way that after the children were taken care of, her husband should have the balance of her property.

Exhibit B, the will of Thomas C. Stearns, was identical with the will of the testatrix, except that clause three devised and bequeathed the residue to his wife and clause four nominated his wife as executrix.

The questions upon which the advice of the Supreme Court of Errors is desired are as follows:

"1. Whether the testimony offered as appears in paragraph 13 of the finding to support the finding of facts set out in paragraph 14 thereof including the will of the said Thomas C. Stearns, husband of the testatrix, 'Exhibit B', is admissible in this action to construe the will of Fannie Nash Stearns.

"2. Whether the said testatrix, Fannie Nash Stearns, disposed of all of her estate by her said will, 'Exhibit A.'

"3. Whether the said testatrix by the third clause of her said will, Exhibit A, disposed of all the rest, residue and remainder of her estate, both real and personal, to her husband the said Thomas C. Stearns.

"4. Whether by the terms of the said Exhibit A the real estate of said Fannie Nash Stearns became intestate estate.

"5. If the real estate of the said Fannie Nash Stearns became intestate estate because of her failure to dispose of the same under her said will, whether in such event, said husband, Thomas C. Stearns, is now debarred from receiving his statutory share therein as husband because of his failure to file, in writing, in the Probate Court at Westport, his election not to accept the provisions of said will, Exhibit A, in lieu of the statutory share.

"6. Whether Thomas C. Stearns, husband of said testatrix, should be charged with the reasonable value of the rental of the homestead of the testatrix from the time of her death up to the final accounting and distribution of her said estate.

"7. Whether the son of the testatrix, Harold C. Stearns, should be charged with the reasonable rental of the rooms in the homestead of the testatrix occupied by him while living with his wife as a distinct family unit, separate and apart from his father and the other children on said premises.

"8. Whether said legacies in the second clause of the will, Exhibit A, should become a charge on the real estate of the testatrix if the personal estate is not sufficient to pay such legacies.

"9. Whether the entire personal estate now remaining should be sold to pay any debts and charges against said estate before said debts and charges shall be charged on the real estate of the said testatrix.

"10. Whether each or any of the minor children or any of the heirs at law, who were at the time of their mother's death or have since become of age are chargeable with reasonable rent when living with the father as one family.

"11. Whether said Fannie Nash Stearns died intestate so far as all real estate owned by her was concerned."

*Nehemiah Candee,* for the plaintiff.

*John T. Dwyer,* for the defendants, Margaret, Frank N., and Thomas C. Stearns.

*James T. Hubbell* and *Ira O. Gregory,* for the defendant, Harold C. Stearns, individually, and as guardian *ad litem* of Mary C. Stearns and Milo E. Stearns, minors.

WHEELER, C. J.   The husband and two of the children of the testatrix would construe the language of the third clause of the will of Mrs. Stearns, "I hereby give, devise and bequeath all the rest, residue and remainder of my personal estate," as devising and bequeathing all the residue and remainder of the real and personal estate of the testatrix. The husband and the two children of the testatrix contend that the term used in the third clause of the will is equivocal or ambiguous as to the property disposed of therein, and

that the intent of the testatrix, the ascertainment of which is the primary end of all construction of every will, can only be known by resort to extrinsic evidence, and that the extrinsic evidence offered was admissible to show the purpose of the testatrix in making her will, to be to carry out an arrangement made with her husband that they make mutual wills of a certain character, and that pursuant to that purpose, they instructed a scrivener to make such wills, and both the testatrix and her husband understood 'that the will of the testatrix and that of the husband as drafted by the scrivener and executed by them, had conveyed to the other all the residue of their respective estates after the cash legacies to their children. This claim is based upon the rule of construction of wills as expressed in Wigram's fifth proposition: "For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will." Wigram on Wills (5th Ed.) p. 56. Quoting and approving this proposition in *Thompson* v. *Betts,* 74 Conn. 576, 579, 51 Atl. 564, we add this comment: "In short, the court may, by evidence of extrinsic facts other than direct evidence of the intention of the testator, put itself as near as may be 'in the condition of the testator in respect to his property, and the situation of his family,' for the purpose of rightly understanding the meaning of the words of his will." The contention is made that the term "personal es-

tate" as used in the will before us is an ambiguous or equivocal term and that the court may receive extrinsic evidence for the purpose of enabling it to determine the quantity of interest given by this term. "Personal estate" is an ambiguous term. It may be used to designate every species of property not coming under the denomination of real estate; in its broader meaning it embraces personal property of every description and kind. *Bellow* v. *Allen's Administrator,* 22 Vt. 108, 110; *In re Althause's Estate,* 63 N. Y. App. Div. 252, 71 N. Y. Supp. 445. It may be used to designate personal effects, as jewelry, wearing apparel and the like, but not stocks or intangibles. *In re Lippincott's Estate,* 173 Pa. St. 368, 34 Atl. 58, 59. In *Southington Bank & Trust Co.* v. *American Baptist Home Mis. Soc.,* 96 Conn. 107, 113, 113 Atl. 166, we held that, from the surrounding circumstances, it was clear that the testator used the term "personal estate" in the more restricted sense of personal effects. And when the context and extrinsic evidence does not show that it was used in a restricted sense, it will be held to embrace every form of personal property, that is, all property not falling within the category of real estate. *Gallagher* v. *McKeague,* 125 Wis. 116, 103 N. W. 233, 234. Moreover, this term is found in the residuary clause of this will, indicating that the testatrix intended by it to embrace all of her personal property, of every description and kind and not within the designation of real estate.

Extrinsic evidence can show, between different meanings of this term, the meaning the testatrix intended, but her intention to give something more than the quantity of property that might be embraced in the term under any of its meanings cannot be shown, for that would be to make a will for the testatrix other than the one she did make. If personal estate as used

in this clause has the meaning of personal property of every kind, the equivocation or ambiguity in the use of this term is resolved. The clause would then disclose a clear purpose and a definite meaning which evidence of extrinsic facts indicating a different purpose or intention on the part of the testatrix would not be admitted to contradict, vary or control. The extrinsic evidence admissible under Wigram's fifth proposition is received "in order to aid a doubtful interpretation, and not so as to materially qualify or contradict the instrument or interpolate a testamentary gift which its own tenor did not justify." 1 Schouler on Wills (5th Ed.) § 588. Counsel inveigh against a rule excluding the evidence offered as one which would carry us back to the "stiff and superstitious formalism," to use the language of Wigmore (2d Ed., Vol. 5, § 2461), from which the law had slowly emerged into a condition of "flexible rationalism." We find no occasion to trace through our own decisions the completeness with which we have accepted and applied Wigram's fifth proposition. We admit parol evidence of the meaning of the testator in the use of some term or word in a will when the meaning is equivocal or ambiguous. That is a very different proposition from that which would substitute in place of the term or word another term or word not used by the testator, or add to a term or a clause an omission.

*In re Curtis-Castle Arbitration*, 64 Conn. 501, 30 Atl. 769, is an example of our application of this rule, and with its citations makes the rule easily understood. The attempt to prove by oral evidence that the testatrix intended to devise and bequeath her real estate as well as her personal property when her will gave merely her "personal estate" is not new to this jurisdiction. A similar attempt in related matters has been made on other occasions and uniformly failed. We cite

four of the most conspicuous instances. In *Mahoney* v. *Mahoney,* 98 Conn. 525, 120 Atl. 342, parol evidence was offered that a testator knew and believed that his daughters never intended to marry, in reality for the purpose of striking from the will the phrase "leaving no child or children at the death. of my said wife." This was an attempt to show that the testator intended something other than the language of the will expressed. We held that the intention was clearly disclosed in the will, and that evidence to vary that intention could not be considered. In *Day* v. *Webler,* 93 Conn. 308, 105 Atl. 618, parol evidence was offered that the testatrix intended by the use of the term "children" to include Mrs. Loomis, who was not a child. We held the offer inadmissible. In *Jackson* v. *Alsop,* 67 Conn. 249, 252, 34 Atl. 1106, a devise was made in a will to Dr. Alsop of a one-quarter interest of certain real estate "to him . . . and his heirs and assigns forever." Evidence was offered to show the intention of the testator for the purpose of establishing that there was intended by the testator to make a "substitutionary devise to the children of Dr. Alsop." In holding the evidence inadmissible, we said: "In the interpretation of a will parol testimony may always be received to remove any ambiguity which may be found to exist in the words of description, either of the property intended to be devised, or as to the person intended to be the devisee. Here no such ambiguity is shown or claimed. The parol evidence was offered to show that the testatrix intended a different result from the one which the words of her will, taken in their primary sense, would indicate." In *Thompson* v. *Betts,* 74 Conn. 576, 51 Atl. 564, a will gave a legacy to one and later again gave the same legacy to this person. Offer was made to show that the testator intended to give both legacies, by evidence that the leg-

atee was his favorite sister; we held that the evidence could not be admitted to change the rule that the legatee was prima facie entitled to one legacy only. It was held in *Graham* v. *Graham,* 23 W. Va. 36, that it was beyond the power of the court to enlarge the phrase in a will, "the rest of my estate personal," to "the rest of my estate real and personal," since this would be making a will for the testator. 1 Schouler on Wills (5th Ed.) §§ 527, 568.

There is another and a controlling reason why this evidence was inadmissible. The utmost the offer discloses is the purpose and intention of the testatrix to devise and bequeath all the residue and remainder of her estate to her husband, and her instruction, through her husband acting as her agent, to the scrivener to so draft the will, and that he failed to draft the will in this particular in accordance with his instructions. The rule is, we believe, universal, that parol evidence of intent cannot be admitted to supply a possible defect or omission in a will occurring through mistake or inadvertence whether of the testatrix or the scrivener. This was declared to be the law of this jurisdiction nearly one hundred years ago and it has remained our law ever since. *Avery* v. *Chappell,* 6 Conn. 270, was a bill in equity through which it was attempted to change a provision in a will in which the testator had given the use of his estate during her widowhood to his wife, by parol evidence that before making his will, the testator declared his intention to give the land in question to his wife until his son Charles should arrive at full age. The court found that the scrivener, by mistake, drew the will giving her the estate only during her widowhood. We say of this offer: "It is however, urged, that parol evidence ought to be admitted, to correct mistakes in deeds and other writings; and that a court of equity will relieve against

such mistakes, as well as against fraud. . . . There is no doubt, that a mistake in a deed or contract may be shown by parol proof; and that, either by a party seeking relief against it in his bill, or setting it up, by way of defense, to rebut an equity. . . . But the plaintiffs in this bill, are obliged to go much further, to obtain the relief sought. They must show, that the testator's intention may be proved to be different from what appears on the face of the will, by parol evidence that he directed the scrivener so to write it that the wife should enjoy the estate till the son should be twenty-one years of age. It is not believed, that any principle or precedent can be found to establish such a doctrine." Shortly after this decision, in *Comstock* v. *Hadlyme Eccl. Soc.*, 8 Conn. 254, 265, 266, the offer was made to prove that the scrivener had omitted to include a legacy to grandchildren and that for this reason the will was void. Determining the point we say: "How often is it, that the words used by the scrivener convey a different estate from what the testator designed. Yet it has always been decided, that parol testimony could not be admitted to prove, that the devisor meant to give a different estate from what the will expressed. . . . If by the construction given to the words used, the intent may be defeated, and yet the will remain valid, why shall not the same effect follow where it arises from an omission to insert certain words which were intended. In neither case, is the effect of the will exactly what the testator intended; but in neither case, can the fact be ascertained, without the aid of parol testimony; and if such testimony is to be admitted, we do away [with] part at least of the beneficial effect of the statute of frauds, and leave every will exposed to litigation, on a claim of a different intent." See also *Fairfield* v. *Lawson,* 50 Conn. 501, 509; *Woodruff* v. *Migeon,* 46 Conn. 236; *Hanvy* v. *Moore,*

140 Ga. 691, 696, 79 S. E. 772; *Lemax* v. *Lemax*, 218 Ill.
629, 75 N. E. 1076; Gardner on Wills (2d Ed.) § 105,
p. 339. Since the will has not disposed of the real
estate, it becomes intestate estate.

The final question is whether, under General Stat-
utes, § 5055, the husband is barred of the share which
he would have taken under the statute had he made
and filed his election so to take. The part of § 5055,
applicable reads as follows: "Where the husband has
by will devised or bequeathed a portion of his prop-
erty to his surviving wife, or where the wife by will
has devised or bequeathed a portion of her property
to her surviving husband, such provision shall be taken
to be in lieu of the share herein provided for, unless
the contrary shall be expressly stated in the will, or
shall clearly appear therein; but in any such case the
party shall have his or her election whether to accept
the provision of such will or take such statutory share,
and such election shall be made in writing signed by
the party entitled to make the same, and lodged with
the Court of Probate before which such estate is in
settlement, within two months after the expiration
of the time limited for the exhibition of claims against
said estate; and if not so made such person shall be
taken to have accepted the provisions of the will, and
shall be barred of said statutory share." The statute
is too plain to require construction. The will did give
to the husband a portion of the estate of the testatrix.
The husband made no election in writing as to whether
he would accept or reject the provisions of the will
in lieu of his statutory share as husband of the testa-
trix. The terms of this statute are explicit, and how-
ever unfortunate the result, the facts of record bring
the case exactly within the statute and require us to
hold that the husband "shall be taken to have accepted

the provisions of the will, and shall be barred of said statutory share."

We answer questions one, two and three in the negative, and questions four, five and eight in the affirmative. Other questions, in view of these answers, do not require answer.

The Superior Court is advised to render judgment in accordance with the answers given to the foregoing questions.

No costs will be taxed in favor of any party in this court.

In this opinion the other judges concurred.