JOHN P. HUNTINGTON, TRUSTEE

*vs.*

WALTER T. CAMP ET ALS.

Superior Court     New London County     File No. 14591

MEMORANDUM FILED JUNE 8, 1942.

*Hibberd R. Norman,* of Norwich, for the Plaintiff.

*Allyn L. Brown, Jr., Andrew B. Davies, Arthur F. Libby, Lee R. Robbins,* of Norwich, and *Hull, McGuire & Hull, Foster K. Sistare,* of New London, for the Defendants.

Preliminary memorandum of decision in action to construe will.

O'SULLIVAN, J. This is an action to construe a portion of the will of William N. Blackstone, who died at Norwich on August 3, 1907, at the age of 53 years. The paragraph which the parties claim is of uncertain meaning is the second. It reads as follows: "Second. To Oliver L. Johnson, Jr., of Norwich all the rest, 'residue and remainder of my estate, upon trust, to hold, manage, invest and reinvest the same and to pay over the net income thereof as it shall accrue to my wife, Julia F. Blackstone, for and during the term of her natural life and upon her decease to pay over and distribute one-third part of the said trust to and among such persons as my said wife shall designate and appoint in and by any instrument in the nature of a will executed according to the laws of this State and to divide the remainder of said trust estate into four equal parts

and to distribute the same to and among my sisters and the issue of my deceased brothers as follows, that is to say:

"To my sister Harriett B. Camp, one part; to my sister Frances E. Huntington, one part; to Lorenzo, son of my deceased brother J. T. D. Blackstone, one part; to the children of my deceased brother Louis L. Blackstone, one part; Provided, however, that if either of said legatees shall die before my said wife, leaving children, such children shall take the share of the parent by right of representation."

The plaintiff has been acting as successor trustee since 1915. The purposes of the trust have terminated, and the principal is ready for distribution, but professing doubt as to the proper distributees, he seeks to have answered several questions, of which the first is as follows: Is the one-fourth part of the two-thirds portion of the trust fund directed to be distributed to Frances E. Huntington payable to the administrator of her estate?

The categorical answer is "Yes." The legacy is an indefeasible vested remainder.

As he prepared to affix his signature to the will on January 10, 1899, the testator could look about and survey the following family situation. He was living with his childless wife whom he had married in 1883. Two sisters were alive, one, Mrs. Frances E. Huntington, the other, Mrs. Harriett B. Camp. The former was then about 47 and had been married since 1882 but had given birth to no children. The latter had been married in 1874. She had borne four children, three of whom were alive. Then there was a nephew, Lorenzo, the son of a deceased brother. This young man had just previously been married. There were also two nieces, Justine and Phyllis, young girls, the daughters of another deceased brother.

These were the natural objects of his bounty and, as the will was prepared, he remembered them all. For his wife he created a life estate in a trust and then provided that upon her death the principal should be divided into four equal parts and distributed, as above indicated, "to my sister Harriett B. Camp, one part; to my sister Frances E. Huntington, one part; to Lorenzo, son of my deceased brother J. T. D. Blackstone, one part; to the children of my deceased brother Louis L. Blackstone, one part."

Had the testator stopped at that point, it is doubtful whether anyone would seriously deny that an indefeasible remainder vested in those legatees who survived him. But he continued with this language: "Provided, however, that if either of said legatees shall die before my said wife, leaving children, such children shall take the share of the parent by right of representation." Because of the incorporation of this proviso, the argument is advanced that the gift to any legatee dying *without* children before the trust ended was either a remainder contingent upon survivorship beyond the period of the trust or a vested remainder that was subject to divestment by the happening of death before that of the life tenant, and thus, in either event, Mrs. Huntington's legacy lapsed, she having died without children in 1912.

This argument, it will be observed, ascribes to silence an affirmative force. Not that silence may not be expressive, for many times it is, and courts are responsive to it when, by so doing, the testator's intention can be carried out without doing violence to any principle of law. *Dolbeare's Appeal,* 28 Conn. 590. But to hold that the childless Mrs. Huntington's legacy failed, not by anything expressly said in the will to that effect, but because of a provision that a deceased legatee's children should receive the share of the parent attributes to silence a significance that is warranted neither by law nor the expressed intention of the testator.

Though the will was probably not the handiwork of Mr. Blackstone, nevertheless he adopted it and what is found therein supplies the most definite source of information for ascertaining what he meant. But the circumstances surrounding him must also be considered, for they throw light on his intention as it may be gathered from what he said.

There are at least three clues to which reference should be made in support of the proposition that the testator intended to make an indefeasible gift to his sister Frances.

In the first place, the will is devoid of any clause capable of disposing of intestate estate. This, it seems to me, points unmistakably to the testator's belief that he had effectuated a total and final disposition of his estate and that no future event would arise requiring the need of a clause to handle matters of intestacy.

In the second place—and this implements the first considera-

tion—Mrs. Huntington was a woman in her late forties when the will was executed. Up to that time, over a period of 17 years of married life, she had never borne a child. Unless her brother was a man of boundless optimism, he must have realized that at her age the chances of her bearing children were extremely remote, if not impossible. It is highly significant that, equipped with this knowledge, he failed to provide a general residuary clause or a substitutional gift contingent upon her dying without children, unless he had intended her legacy to be indefeasible.

By way of parenthesis, I might observe that, though the clause is applicable to all, the persons the testator probably had in mind were Mrs. Camp, Lorenzo, Justine and Phyllis, when he said "that if either of said legatees shall die before my said wife, leaving children, such children shall take the share of the parent." For, as indicated above, he knew that Mrs. Camp was the mother of three children, and he also know that in all probability Mrs. Huntington never would have any.

But this aside, the circumstance of Mrs. Huntington's age coupled with the absence of any expressed direction for disposing of her legacy is strongly indicative of an intention on the testator's part to make her gift indefeasible.

In the third place, the grand plan of his bounty accounts for the incorporation of the proviso that "if either of said legatees shall die before my said wife, leaving children, such children shall take the share of the parent." This plan was to give to each of the four branches of his family an equal share in his estate. But he was a man who wished his own blood to enjoy, whenever possible, what he possessed. Not a single stranger did he mention as a beneficiary. His gifts were only to those of his blood. It is reasonable to believe that this affection would extend to unborn grandnephews and grandnieces. Hence, it seems to me, that with studious deliberation and design he made impossible the transfer to strangers of any gift to a legatee who had children. Thus, for example, Mrs. Camp would have been precluded from disposing by will to strangers a gift that the testator wished only her children to enjoy, should she predecease the life tenant. In short, the proviso was inserted to protect those of his blood.

But, it is urged, unless the legacy to Mrs. Huntington is declared to have failed, this so-called grand plan of his bounty

will be thwarted. It cannot be denied that strangers will benefit by the indefeasibility of Mrs. Huntington's legacy, but it is likewise true that they will also benefit, though to a lesser extent, by the failure of the gift, for it would then become intestate estate, a portion of which will flow back to her estate and from there to the same strangers.

And so the significance of the absence of a clause to dispose of intestate estate looms larger and becomes more compelling, especially as it was obviously necessary, if the testator wished no stranger to share in his estate.

I conclude, then, that he was not averse to the possibility of strangers' sharing in his estate although he was vitally concerned with making impossible a transfer to them of any gift while his own blood was still existent in the family branch to which the gift had been made.

From these clues and from others of less significance that might be mentioned, I hold that Mrs. Huntington's legacy was indefeasible. But before passing to another question, one further point made by one of the parties should be mentioned. It is claimed that the legacies to the remaindermen were a class gift. While this claim, if sound, would avoid intestacy, to so hold would require the emasculation of our law on this subject. *Bill vs. Payne,* 62 Conn. 140; 1 *Cleaveland, Hewitt and Clark, Probate Law and Practice of Connecticut* (1926), §437.

The second question which the trustee seeks to have answered is this: Is the one-fourth part of the two-thirds portion of the trust fund directed to be distributed to Lorenzo Blackstone's intestate estate?

The answer to this question admits of no doubt. Lorenzo, having died before the testator, his legacy lapsed and became intestate estate. *Mead vs. Close,* 115 Conn. 443.

The third and final question demanding an answer is the following: to whom does the intestate estate created by the lapsed legacy of Lorenzo pass?

The executor of the will of the testator's widow makes the claim that he is entitled to share in the distribution. It appears that upon the death of her husband, Mrs. Blackstone, whose marriage occurred in 1883, accepted the provisions of the will. Section 5156 of the General Statutes, Revision of

1930, permits the widow of a testator to make an election to accept the provisions of the will or to enjoy a statutory share of the estate. In view of the widow's election, her executor is not now entitled to what she could not claim. *Stearns vs. Stearns,* 103 Conn. 213.

Accordingly, the intestate estate is to be distributed as follows: one-ninth to each of Mrs. Camp's children; one-third to the administrator on the estate of Frances E. Huntington; one-sixth, to Justine Perkins, and one-sixth to the executor of the will of Phyllis Cisco.

Counsel fees have been requested by the parties. I shall be in my chambers Saturday morning, June 13th, at which time those attorneys who wish may appear to discuss the matter.

In the meantime judgment will not enter.