Filed May 16, 1890.

◆

No. 13,963.

## RAPP v. REEHLING ET AL.

**WILL.**—*Execution of on Sunday.*—*Validity.*—*Sunday Law.*—A will executed on Sunday is valid. The drafting and execution of a will on Sunday do not come within the definition of "common labor," so as to be prohibited by section 2000, R. S. 1881, making it a penal offence to be found engaged in common labor, or in one's usual avocation on that day.

**SAME.**—*Contradiction of its Terms.*—*Extrinsic Evidence.*—Extrinsic evidence is inadmissible to contradict the terms of a will, or to show that the testator's intention was different from that therein expressed.

From the Allen Circuit Court.

*S. R. Alden,* for appellant.

*P. B. Colerick* and *W. G. Colerick,* for appellees.

OLDS, J.—This was an action by the appellant against the appellees to contest the will of Christian Gottlieb Rapp, deceased. The errors assigned are the rulings of the court in sustaining demurrers to the second and third paragraphs of appellant's complaint. The first paragraph of complaint having been withdrawn, there was a judgment on the demurrer for the appellees.

The second paragraph alleges that the will was executed on Sunday, and alleges facts showing that the will might have been executed upon some other day of the week, and that there was no necessity for the execution of the will upon

Rapp *v.* Reehling *et al.*

Sunday; that the testator was, and had been, for a period of time prior and subsequent to the execution of said will, in a condition, both physical and mental, to have executed a will, and that, as a matter of convenience, he arranged with his attorney who drafted the will, and a friend, to come to his (the testator's) house on Sunday and draft the will, and the will was drafted and written by the attorney, and executed by the testator on Sunday. This paragraph presents the question as to the validity of a will executed on Sunday without any unusual circumstances or special necessity having existed for its execution upon that particular day. It is contended by counsel for appellant that a will executed upon Sunday is void, unless it be shown that some unusual circumstances existed making a necessity for its execution upon that day; that the drafting and execution of a will come within the definition of common labor, and are prohibited by section 2000, R. S. 1881, which provides that "Whoever, being over fourteen years of age, is found on the first day of the week, commonly called Sunday, rioting, hunting, fishing, quarrelling, at common labor, or engaged in his usual avocation (works of charity and necessity only excepted), shall be fined in any sum not more than than ten nor less than one dollar; but nothing herein contained shall be construed to affect such as conscientiously observe the seventh day of the week as the Sabbath, travellers, families removing, keepers ·of toll-bridges and toll-gates, and ferrymen acting as such."

It is contended that a broad construction should be given to the words " common labor " and " usual avocation," so as to include the drafting and execution of a will, and that such has been the construction placed upon the statute by this court, by holding that contracts and bonds, and even church subscriptions come within the term " common labor," and their execution prohibited on Sunday, and are therefore invalid unless afterwards ratified.

We are unable to agree with the theory of counsel. There is a wide distinction between the execution of contracts, notes

and bonds on Sunday and the execution of a will; the former are instruments executed in the common every day affairs of life in the usual course of business; they create a liability from one person to another; they are the foundation of, or a necessity for their execution arises out of, business transactions.

It is not so in regard to a will; its execution is the voluntary act of the testator. It may be revoked or changed in a proper manner at his discretion. It provides for the disposition of the testator's estate after his death. It might be said to have some elements of sacredness about it. It is executed in anticipation of the death of the testator, and is to take effect at his death and be operative thereafter. One of its prime objects is to enable the testator to provide in a proper manner for those who are the objects of his bounty; giving to those who need and who ought to receive his bounty, but who would not were it not for the right of testamentary disposition of property. By the execution of a will the testator is also enabled to aid in continuing and building up institutions of charity and learning which could not be done by other methods requiring a surrender of the full control of one's property during life, and these objects, accomplished by means of testamentary disposition of property, are entitled to be treated with some degree of sacredness and respect; but if the drafting and execution of a will could be said to fall within the term "common labor," yet there would at all times exist a necessity for the immediate execution of a will.

The law recognizes the right of persons to make a testamentary disposition of their property by will, and to make such disposition while in life and possessed of sufficient mental capacity to make a will, and the only certainty of being able to make such disposition of one's property is to do so instantly, when one is possessed of his faculties. Death is certain, and life is uncertain. One has no lease of life or his

mental faculties; either may be extinguished instantly, and the only security one has of being able to execute a will and dispose of his property in the manner in which he may desire is to do so when in the possession of his faculties, and the uncertainty of life creates a constant necessity, and presents to one's mind the uncertainty of being able to provide for those who are near to him, and are the objects of his bounty, or making provisions for and aiding in the perpetuation of those institutions in which he is interested, and which are sacred to him and beneficial to the public interests, if the making of the will be delayed. The drafting and execution of a will are akin to the execution of a marriage contract and the solemnizing of the marriage. It may as well be said that the minister while engaged in solemnizing a marriage is engaged in common labor, or at his usual avocation, as that the lawyer who drafts a will is so engaged, as the minister evidently is engaged in the solemnizing of marriages more frequently than the lawyer is engaged in the writing of wills.

The statute makes it a penal offence to be found engaged in common labor or engaged in one's usual avocation. It certainly would not be contended that a minister of the gospel, engaged in solemnizing a marriage on Sunday, or a lawyer engaged in writing a will to be executed on Sunday, would be subject to indictment and prosecution for a violation of the statute, and yet if either comes within the prohibition of the statute they would be liable to a criminal prosecution, and the one is evidently as much a violation of the statute as the other. The one act is the solemnizing of a contract whereby two persons are joined together and become members of one family by the bonds of holy wedlock, whereby they both become members of one household, a contract and union in which society is interested. The other is engaged in the execution of a will providing for the members of his household. The law, it is true, provides for a distribution of property, but oftentimes the relationship or

the circumstances are such that the law does not make a proper or equitable provision, and in such cases the purpose of a will is a sacred one, making proper provision for the members of the testator's household, or the persons who are the objects of his bounty and dependent upon him for support, and not so related as that the law would cast his estate upon them. Possibly unjust wills may be made, but that does not affect the right to make a will.

It seems clear to us that the drafting and execution of a will do not come either within the letter or spirit of the statute hereinbefore referred to. It is not an act commonly done, but rather an uncommon act to execute a will. It is rare that a person who dies possessed of property disposes of it by will, and those who do seldom make more than one during a lifetime. Occasionally one revokes a will and makes a new one, or adds a codicil, but testamentary disposition of property is an exception to the usual mode in which the title to property passes from one to another, and certainly no desecration of the Sabbath existed on account of the day being occupied for that purpose. No evil tendencies were growing out of such work on the Sabbath day which required legislation to correct; but we are not required to pass upon the question without authority, as the courts of other States have passed upon the same question, and held that a will executed on Sunday is valid. *Bennett* v. *Brooks*, 9 Allen, 118; *Beitenman's Appeal*, 55 Pa. St. 183; *George* v. *George*, 47 N. H. 27.

The third paragraph of the complaint, as we construe it, alleges a mistake in the will; that by mistake of the scrivener or translator of the will it was not written as the testator intended; that he did not intend, or wish or will to give the one-half of his estate to the persons named to whom it was devised and bequeathed in the will, but intended to give it to other persons. These averments seek to contradict the terms of the will, or to show that the testator's intention was different from that expressed by the will. This

can not be done. *Bunnell* v. *Bunnell*, 73 Ind. 163; *McAl-ister* v. *Butterfield*, 31 Ind. 25 ; *Grimes* v. *Harmon*, 35 Ind. 198.

There is no error in the record.

Judgment affirmed, with costs.

Filed Feb. 26, 1890; petition for a rehearing overruled May 16, 1890.