JAMES J. FITZPATRICK ET AL. *vs.* JOHN CULLINAN, EXECUTOR (JAMES J. FITZPATRICK ET AL. APPEAL FROM PROBATE).

Third Judicial District, Bridgeport, October Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

As suggestive of undue influence arising from a confidential relation between a testator and the beneficiary of his will, there is a broad distinction to be observed between those who are strangers and those who are members of a family, as father and son. In the latter case the confidential relation is but natural and can furnish no ground for an inference or presumption of the exercise of undue influence.

The facts in the present case briefly reviewed and a special finding of the jury of the existence of undue influence *held* not to be supported by the evidence.

The mere execution of a later will which contains no revoking clause does not operate to revoke the prior will; for until the testator's death the last will is wholly ambulatory.

One who contests a will on the ground that it has been revoked by a later one, which was subsequently destroyed, has the burden of showing that the later will contained a revoking clause.

Whether, if this were shown, the subsequent destruction of the later will with intent to revive the former would be effectual without its republication, *quære*.

In the present case the only testimony as to a revoking clause was that of the attorney who drew the will, who stated that he had no recollection whatever on the subject, but that he did insert such clauses more often than not. *Held* that this was an insufficient basis for a finding by the jury that the later will contained such a clause.

Argued November 4th—decided December 20th, 1913.

APPEAL from an order and decree of the Court of Probate for the district of Bridgeport approving and admitting to probate an alleged will of Patrick Fitzpatrick of Bridgeport, deceased, taken to the Superior Court in Fairfield County and tried to the jury before *Burpee, J.;* verdict and judgment in favor of the plaintiffs, setting aside the alleged will, and appeal by the defendant. *Error and new trial ordered.*

*Robert E. DeForest,* for the appellant (defendant).

*John C. Chamberlain,* for the appellees (plaintiffs).

BEACH, J. The verdict of the jury finds that the paper admitted to probate is not the last will and testament of Patrick Fitzpatrick. The jury also answered four special interrogatories, as follows: (1) Did the second will contain a clause revoking all former wills? Yes. (2) Was the second will destroyed by the testator, Patrick Fitzpatrick, with the intention of reviving the will before you? Yes. (3) Was the testator at the time of the execution of the will at bar of sound mind? Yes. (4) Was any undue influence used upon the testator by Patrick H. Fitzpatrick and Emma Fitzpatrick, his wife, or by either of them, to induce him to execute the will at bar? Yes.

The appeal presents two questions: Whether the evidence affords any legal basis for a conclusion that

the execution of the will at bar was induced by undue influence; and whether the execution of the second will operated to revoke the will at bar, notwithstanding its subsequent destruction with intent to revive the will at bar.

The testimony bearing on the issue of undue influence was substantially as follows: When the will was executed the testator was a widower, with three married sons. The will cut off James, the eldest, with a legacy of $100, devised the homestead to Patrick, the youngest, and divided the balance of the estate equally between Patrick and Stephen. Six months after the execution of the will the testator deeded the homestead, representing in value about one third of the whole estate, to Patrick's wife, reserving to himself a life use. So that the operative effect of the will after this conveyance had been made was to practically disinherit James, and to divide the estate equally between Patrick and Stephen.

So far as the disinheritance of James is concerned, all the evidence points to the conclusion, directly testified to by Mr. Cullinan, who drew the will, that it was executed while the testator was under the influence of a strong feeling of resentment against his eldest son. It appears that James and his wife had lived at the homestead with the testator for about two years, during which time the father and son had frequent disagreements, and the father on several occasions had caused notice to quit to be served upon James in the attempt to get him out of the house. In the spring of 1906 there was a violent quarrel, as the result of which the father left his home, and took refuge in Patrick's house for about three months, and went back to the homestead after James had finally left. The will was executed shortly after the quarrel between James and his father. Mr. Cullinan testified that the testator felt that he had

been ill-treated by James, and wanted to see that he did not get his expected share of the property. There was no testimony that Patrick or his wife solicited or suggested the execution of the will. Mr. Cullinan, who drew it, had been for some years the testator's legal adviser. Neither Patrick nor his wife was present when it was drawn or executed, and they testified they did not know its contents until long afterward. There was evidence that Patrick was the favorite son of his father, and had great influence over him, and that he transacted a good deal of business for him, although, until 1910, a real-estate agent looked out for his property and collected his rents. No instances are given in which Patrick's influence over his father led to any unreasonable or unnatural action on the testator's part. The conveyance of the homestead to Patrick's wife, reserving a life use, was but another mode of carrying out the specific devise contained in the will. As between Patrick and Stephen, Patrick was the favorite son of his father. On the whole record the uncontradicted evidence is consistent with the conclusion that the testator disinherited James on account of long-continued bickering, terminating in a violent quarrel, and gave James' portion to Patrick, because Patrick was admittedly his favorite son.

Under the circumstances of this case the burden was on the contestants to prove the existence of the alleged undue influence, and that it was exerted on the testator so as to cause him to make a will different from that which he would otherwise have made. We think the contestants failed to sustain the burden of proof, or to make out a prima facie case sufficient to support a verdict upon either of these issues.

The evidence as to Patrick's influence over his father did not tend to prove the existence of undue influence in the legal sense. The rule on that subject is laid

down in *Lockwood* v. *Lockwood,* 80 Conn. 513, 523, 69 Atl. 8, as follows: "There is a broad distinction between the effect of a confidential relation of a legatee to the testator, as suggestive of undue influence, when that legatee is a stranger and when he is a child. In the latter case, both the relation of confidence and some participation in the estate is natural. In *Dale's Appeal,* 57 Conn. 127, 144, 17 Atl. 757, we say: 'It is the duty of a son to entitle himself to the confidence of his parents; it is his right to ask with earnestness, restrained within proper limits, for testamentary remembrance; it is the privilege of the parent to make it, having capacity to know what is done.'"

The contestants were in this case bound to go beyond the mere proof of the relation of confidence and affection, and to offer some evidence, direct or indirect, from which it might fairly and justly be concluded that the son abused the confidence of the father. No such proof is offered except the execution of the will itself, and of the conveyance of the homestead, which was but another expression of the same intent to disinherit James, and to give his share to Patrick, or to Patrick's wife. When, therefore, independent and reasonably sufficient reasons for disinheriting James, and for giving his share to Patrick, are brought into the case, the effect of the will and deed as indirect or circumstantial evidence of the existence of undue influence is nullified. No conclusion that Patrick abused the confidence of his father can fairly and justly be drawn from the will and deed when thus explained. And, of course, no basis whatever is left for any inference that, but for the pressure of undue influence, the testator would not have disinherited James. We think that the special finding of the jury as to undue influence is without any sufficient foundation in the testimony.

The next question is whether the will at bar was re-

voked by the second will, executed some two or three years afterward, notwithstanding the subsequent destruction of the second will with intent to revive the first. The contestants' argument on that point hangs on the special finding of the jury, that the second will contained a revoking clause, and upon the effect of such revoking clause as immediately cancelling all prior wills. Without such revoking clause, it is admitted that the second will was wholly ambulatory. *Peck's Appeal*, 50 Conn. 562. The burden of proof was therefore on the contestants to prove the existence of the revoking clause in the second will by a preponderance of evidence. Upon this point the only evidence contained in the record is the testimony of Mr. Cullinan, to the effect that he had no recollection of putting it in or of leaving it out, and that his practice in drawing wills was to put such a clause in more often than not, but that he did not always put it in, and had no recollection as to whether the second will contained a revocation clause or not. Manifestly, this testimony has no probative force as to the contents of the particular paper in question, because the substantive provisions of a will are not controlled by the scrivener, but by the testator's wishes. The scrivener's practice of inserting a revoking clause in wills more often than not simply reflects the desires or the indifference of a majority of his clients, and furnishes no logical basis for an inference that Patrick Fitzpatrick desired by this instrument to revoke his former will. Moreover, Mr. Cullinan testified, with some corroboration, that the second will was made because the first was supposed to be lost, and was destroyed as soon as the first will was found.

There is no evidence in the record from which the jury could reasonably have found that the second will contained a revoking clause; and it is therefore unneces-

sary to determine the question, left undecided in *Peck's Appeal*, 50 Conn. 562, whether, under our present statute, such a revoking clause would take effect immediately, so that the subsequent destruction of the second will with intent to revive the first would be ineffectual without a republication of the first will.

A careful examination of the whole record convinces us that the verdict is against the evidence, and that the court erred in refusing to set the verdict aside.

There is error and a new trial is ordered.

In this opinion the other judges concurred.